IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-316-GCM

| UNION FIRST MARKET BANK, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | ORDER |
| DONALD A. BLY, II, | ) | |
| Defendant. | ) | |

THIS MATTER comes before the Court on Defendant's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a), [Doc. No. 10], Plaintiff's response, [Doc. No. 18], and Defendant's reply, [Doc. No. 22]. This matter is also before the Court on Plaintiff Motion to Strike Jury Demands [Doc. No. 14], Defendant's response, [Doc. No. 23], and Plaintiff's reply [Doc. No. 24]. The matters are ripe for disposition. For the reasons stated herein, Defendant's Motion to Transfer [Doc. No. 10] is GRANTED and the Court declines ruling on Plaintiff's Motion to Strike Jury Demands [Doc. No. 14] as that motion will be transferred with the case to the Eastern District of Virginia in the Richmond Division for the Judge assigned to the case to decide.

**Factual Background**

Plaintiff filed the instant action against Defendant Bly in this Court on May 24, 2013. [Doc. No. 1]. Plaintiff provided investment management services to Defendant and in 2011, loaned Defendant money. Plaintiff alleges that Defendant Bly defaulted on that loan to Plaintiff in the amount of approximately $2,000,000.00. The loan is secured by real estate located in Virginia Beach, Virginia. The lender on the Note is identified as Union First Market Bank

1

Richmond Commercial Loan Center, Richmond Virginia. [Doc. No. 1-1]. The Notice of Maturity and Demand for Payment letter was signed by Hilary P. Blanchard on Plaintiff's Richmond, Virginia letterhead. [Doc. No. 1-2]. Plaintiff alleges breach of promissory note and seeks a declaratory judgment that: (a) it did not owe or have any fiduciary duties or obligations to Defendant; and/or (b) that Plaintiff did not breach or violate any fiduciary duties or obligations to Defendant; and/or (c) that Defendant has not been damaged in any way by Plaintiff's alleged breach or violation of any fiduciary duties or obligations to Defendant. [Doc. No. 1].

In his counterclaim, Defendant contends that on March 12, 2003, he and Plaintiff entered into a contract wherein Plaintiff undertook responsibility for holding and prudently investing Defendant's income and assets. The agreement between Defendant and Plaintiff was negotiated and accepted by Michael Williams, on behalf of the Trust and Investment Management Division of Plaintiff's predecessor. Mr. Williams was located at the bank's offices in Richmond, Virginia. The Agreement required Plaintiff's predecessor and later Plaintiff to make investments "in keeping with our investment objective and risk tolerance." [Doc. No. 12, Ex. A]. The Agreement further provided that the bank was to use its discretion with regard to the account maintained by Defendant "as though [the bank was] the owner of the property." [*Id*]. Under the Agreement, Plaintiff would be liable for gross negligence, bad faith or willful misconduct. [*Id.*]

Defendant's Counterclaim is based on allegations of certain misconduct of the bank resulting in breaches of the Agreement, including (1) violations surrounding the investment parameters advanced by Mr. Williams and accepted by Defendant; (2) misconduct surrounding the financing of property located in Virginia Beach, Virginia and partially owned by an entity in which Defendant has an indirect financial interest through multiple consecutive promissory notes secured with Defendant's accounts with Plaintiff; (3) misconduct surrounding the giving of lines

of credit by Plaintiff for construction on the property in Virginia Beach; (4) the failure of Plaintiff to live up to promises made with regarding to the property in Virginia Beach; (5) the borrowing of money from F.M. Jones, a resident of Chesapeake, Virginia for the property in Virginia Beach; and (6) the improper use of Defendant's account to cover ongoing construction costs with respect to the property in Virginia Beach. [See Doc. No. 12 and exhibits]. Defendant contends that Plaintiff breached its contractual duties to provide investment management services to him and owes him $12,000,000.00.

### Standard of Review

The venue statute provides that "a civil action may be brought in (1) a judicial district in which any defendant resides . . . (2) a judicial district in which a substantial part of the events or actions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391. The parties agree that venue is proper in both this Court and in the Eastern District of Virginia.

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought or to any district or division to which all parties have consented." *See In re Carefirst of Maryland, Inc.,* 305 F.3d 253, 255 (4th Cir. 2002).

In determining whether transferring venue is in the interest of justice and convenience of the parties and witnesses, a court the following factors must be consider factors:

> (1)the plaintiff's initial choice of forum; (2) the residence of the parties; (3) the relative ease of access of proof; (4) the availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses; (5) the possibility of a view; (6) the enforceability of a judgment, if obtained; (7) the relative advantage and obstacles to a fair trial; (8) other practical problems that make a trial easy, expeditious, and inexpensive; (9) the administrative difficulties of court congestion; (10) the interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) the avoidance of unnecessary problems with conflict of laws.

*Hames v. Morton Salt, Inc.*, 2012 WL 1247201 at *4-5 (W.D.N.C. 2012); *see also Jubilee House Community, Inc. v. Coker International, Inc.*, 2013 U.S. Dist. Lexis 42215 (M.D.N.C. 2013) Courts are to make both a "qualitative" and a "quantitative" analysis. *Daramic, LLC v. Entek International, LLC*, 2012 U.S. Dist. Lexis 62061 at *5 (W.D.N.C. 2012).

**Analysis**

1. **Plaintiff's Initial Choice of Forum**

Although the choice of forum by the Plaintiff is ordinarily given considerable weight, "that weight is diminished when the conduct giving rise to the complaint did not occur in the forum." *Hames*, at 5 *citing Parham v. Weave Corp.*, 323 F.Supp.2d 670, 674 (M.D.N.C. 2004); *Telepharmacy Solutions, Inc. v. Pickpoint Corp.*, 238 F.Supp. 2d 741, 743 (E.D.Va. 2003); and *Lynch v. Vanderhoef Builders*, 237 F.Supp2d 615, 617 (D.Md. 2002). It is evident here that the conduct giving rise to the causes of action in either the Complaint or Counterclaim did not occur in North Carolina.

2. **Residence of the Parties**

Defendant Bly's residence is in North Carolina. Plaintiff's headquarters is in Virginia. Plaintiff argues that it is a resident of North Carolina for purposes of 28 U.S.C. § 1404(a)

analysis because it has not contested personal jurisdiction. However, the Court notes that Plaintiff's headquarters, principal place of business and branch involved in the allegations of the Complaint and Counterclaim are in Virginia.

### 3. Relative ease of access to proof

The parties concede that the vast majority of relevant evidence will be contained in various documents. Defendant Bly contends that virtually all of the documents needed in discovery are located in the Eastern District of Virginia. Plaintiff argues that it is willing to produce all evidence in its possession (which is Virginia) in this district and "to conduct all depositions of, and collect relevant evidence from, all third parties in whatever forum is most convenient to [Defendant]. [Doc. No. 18 at 7].

### 4. Witnesses

As noted by the court is *Hames*, "[o]ften cited as the most important factor . . . is the convenience of witnesses, most particularly, non-party witnesses, who are important to the resolution of the case," 2012 U.S. Dist. Lexis 52134 at *7. Defendant Bly identifies six witnesses located in the Eastern District of Virginia that have knowledge of the facts surrounding the events at issue in this case, including Dan Holland, Dave Lowman, F.M. Jones, Mike Williams, Thomas Winston and Pope Woodward. [Doc. No. 11-1 at ¶ 10(a)-(f)]. Plaintiff argues that any witnesses who are employees of Union First Market Bank will voluntarily travel to this district for trial and that the two witnesses who Defendant admits are the most important, Michael Williams and Thomas Winston, have filed declarations stating that they would not find travel to Charlotte inconvenient and prefer this venue to the Eastern District of Virginia. Indeed,

Plaintiff states that these two witnesses are willing to sign consent decrees expressly waiving any objection to appearing in this district. [Doc. No. 18 at 9-10].

5. **View**

Defendant Bly argues that if a view of the property that secures the promissory note is needed, that would occur in the Eastern District of Virginia. Plaintiff argues that even if the property had some bearing on this case, there would not be a need to visit the property at this late date years after the events in question.

6. **The enforceability of a judgment**

Defendant Bly argues that any payment to Plaintiff would come from the property which is located in Virginia. Plaintiff concedes that proceeding in another district would not render any subsequent judgment unenforceable against Defendant.

7. **Relative advantages and obstacles to a fair trial**

Defendant argues that if the case remains in this district the opportunity for live testimony is diminished and that he only has control over himself and no other witnesses. Defendant also points out that all of the witnesses will have to travel from Virginia to this district and Bly also notes that all counsel for both sides are in Virginia. Plaintiff counters that the witnesses and counsel are spread out between Richmond Virginia and Virginia Beach, Virginia and therefore would be required to travel even if the case were to be transferred to Virginia.

8. **Practical problems that make a trial easy, expeditious and inexpensive**

Defendant Bly again points out that all counsel and witnesses, except himself, would be

required to travel and incur expenses to come to this district.  If the case were transferred to Virginia, some of the witnesses would have virtually no travel and could even remain at work until called to testify and other witnesses would have less travel than if the case were to remain in this district.  Plaintiff reiterates that counsel and the witnesses are spread out between Richmond and Virginia Beach and therefore there would be some travel for some of the witnesses and counsel even if the case were to be transferred to Virginia.

### 9.  Court Congestion

Defendant contends that the median time for disposition in all cases is 8.8 months for this district versus 5.4 months in the Eastern District of Virginia and that the time interval to trial is 23 months in this district and 12.9 months in the Eastern District of Virginia.  Plaintiff argues that this difference barely weighs in favor of transfer and argues that any difference in actual court congestion is negligible.

### 10.  Familiarity with state law

Defendant Bly argues that contracts at issue in the Complaint and Counterclaim contain provisions for the application of Virginia law and given the interest in citizens of a state having local controversies decided close to home and the familiarity of the federal courts in Virginia with Virginia law, the factor weighs in favor of transferring.  Plaintiff points out that there are no issues of Virginia law that are complicated or unsettled such that this Court would have difficulty applying contract law from a contiguous state.

### 11. Conflict of laws

Plaintiff and Defendant agree that they know of no conflict of law.

The Court has considered all of the factors, the convenience of the parties and witnesses, and in the interest of justice, the Court grants Defendant's Motion to Transfer to the Eastern District of Virginia in the Richmond Division. The Court concludes that the only contact this litigation has to this district is that the Defendant Bly happens to reside here. While Plaintiff's choice of forum is entitled to significant weight, it will not dictate the outcome of a § 1404(a) motion where the only connection to this district is the fact that the Defendant resides here thus making this district an appropriate venue but not necessarily a convenient venue. Indeed, the events giving rise to the allegations in the Complaint and Counterclaim took place in Virginia. Therefore, Defendant's Motion to Transfer [Doc. No. 10] is **GRANTED**. The Court declines to rule on Plaintiff's Motion to Strike Jury Demand [Doc. No. 14]. The Clerk is directed to transfer the case to the Eastern District of Virginia in the Richmond Division.

**Order**

**NOW, THEREFORE, IT IS ORDERED** that:

(1) Defendant's Motion to Transfer [Doc. No. 10] is GRANTED and this action is **TRANSFERRED** to the United States District Court for the Eastern District of Virginia in the Richmond Division;

(2) The Court declines to rule on Plaintiff's Motion to Strike Jury Demand [Doc. No. 14] and will transfer the Motion to the Eastern District of Virginia in the Richmond Division for disposition;

(3) The Clerk is directed to send the instant file, including this Order and the pending Motion to Strike [Doc. No. 14] to the Clerk of the United States District Court for the Eastern District of Virginia in the Richmond Division.

**SO ORDERED**.

Signed: August 16, 2013

Graham C. Mullen
United States District Judge